\*\*E-Filed 11/23/2010\*\*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| COMMITTEE FOR RECOGNITION OF NURSING ACHIEVEMENT,<br><br>Plaintiff,<br><br>v.<br><br>LUCILE SALTER PACKARD CHILDREN'S HOSPITAL,<br><br>Defendant. | Case No. 5:10-cv-01633 JF<br><br>ORDER[1] GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION; AND TERMINATING AS MOOT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Committee for Recognition of Nursing Achievement (CRONA) moves to compel Defendant Lucile Salter Packard Children's Hospital (the Hospital) to arbitrate a grievance under the binding arbitration provision of parties' collective bargaining agreement (CBA). The Hospital has filed a cross-motion for summary judgment, contending that the grievance is not covered by the CBA and may be asserted only before the National Labor Relations Board (NLRB). The federal policy in favor of arbitration of labor-management disputes requires courts to compel arbitration under a CBA unless the court can say with positive assurance that the grievance does not fall within a permissible interpretation of the agreement's arbitration provision. Because in this case there is a permissible interpretation of the CBA that

---

[1] This disposition is not designated for publication in the official reports.

1

Case No. 5:10-cv-001633 JF
ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION; AND TERMINATING AS MOOT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC3)

covers the grievance, the motion to compel arbitration will be granted. The motion for summary judgment will be terminated as moot.

## I. BACKGROUND

**A.      The Parties and the CBA**

CRONA and the Hospital were parties to a CBA that was in effect between April 1, 2007 and March 31, 2010.[2] *See* Agreement Between Lucile Salter Packard Children's Hospital and Committee for Recognition of Nursing Achievement, Declaration of Laurie J. Quintel, Ex. A. The "Recognition And Coverage" of the CBA reads as follows:

> Lucile Salter Packard Children's Hospital hereby recognizes CRONA as the exclusive collective bargaining representative for purposes of collective bargaining concerning wages, hours and working conditions for Registered Nurses, currently employed by the Employer at Lucile Salter Packard Children's Hospital in the following classifications: *Regular full and part-time Registered Nurses, including relief and clinic nurses, engaged in the direct provision of patient care for 30% or more of their commitment*, including nurses in the job classifications of Staff Nurse I, II, III, and IV; excluding all supervisors, including the classifications of Patient Care Director, Patient Care Manager, Assistant Patient Care Manager, Nursing Supervisors, and Coordinator of Utilization Management. Also excluded are all nurses not directly engaged in the provision of patient care for 30% or more of their commitment, including the classifications of: Nursing Education Coordinator I and II, Infection/Employee Health Coordinator, Clinical Nurse Specialist, Utilization Management Nurse, Home Health Coordinator, Case Manager, Nurse Recruiter, Nursing Systems Analyst, and Information Systems Nurse.

Quintel Decl., Ex. A at 1 (§1.1) (emphasis added). Section 1.3 provided that:

> In the event the Employer determines that the content of a nurse's job covered by this Agreement is such that the job should no longer be in the bargaining unit represented by CRONA, the Employer will notify CRONA in writing. If CRONA does not agree that the job should be removed from the bargaining unit, CRONA will notify the Director of Human Resources within ten (10) calendar days of receipt of the Employer's notice that it wishes to discuss the removal of the job. The Employer shall arrange a meeting to include the nurse whose job is in question, a CRONA representative and an Employer representative to review the content of the nurse's job. Subject to the duty to notify and meet with CRONA specified above, the Employer retains the management right to determine the content of nurses' jobs, and the exercise of that right will not be

---

[2] Although the CBA expired on March 31, 2010, CRONA's demand for arbitration stems from a dispute that arose while the contract still was in effect. The Court retains authority to compel arbitration of a covered dispute even though the CBA has expired. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964) (compelling arbitration of grievance alleging violation of an expired collective bargaining agreement).

2

Case No. 5:10-cv-001633 JF
ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION; AND TERMINATING AS MOOT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC3)

> reviewable under this Agreement. *If a Registered Nurse position is removed from the bargaining unit in violation of Section 1.1 above, the grievance procedure shall be applicable.*

*Id.* at 1-2 (§ 1.3) (emphasis added). The CBA also contained a section entitled "Reserve Rights of the Employer," which provided that "[e]xcept as modified or restricted by the express terms of this Agreement, the employer reserves to itself all rights and functions of management . . . . It is agreed that this Agreement sets forth expressly all restrictions on the functions and rights of the Employer and no implied restrictions or obligations exist or may be relied upon in interpreting or applying this Agreement." *Id.* at 74 (§ 31).

Finally, the CBA contained a grievance procedure culminating in final and binding arbitration. *Id.* at 59-64 (§ 23). A grievance was defined as "a written claim by a nurse or CRONA concerning a nurse's wage, hours, or working conditions and involving the interpretation or application of this Agreement." *Id.* at 59-60 (§ 23.1.2). In the event that the parties were unable to resolve a grievance between themselves, CRONA could request arbitration. *Id.* at 61 (§ 23.2.3(c) & 23.2.4). Such arbitration was mandatory. *Id.* (§ 23.2.4).

**B.     The Dispute and CRONA's Demand for Arbitration**

In February 2009, the Hospital opened the Bass Center for Childhood Cancer and Blood Diseases, which includes various clinics and a day hospital. After the Bass Center was completed, some nursing functions that had been performed at the Bass Center Clinics were transferred to the Bass Center Day Hospital, while others remained at the clinics. Herman Decl.¶ 6-7. Work that the Hospital determined involved "direct patient care" was transferred to the day hospital, and CRONA-represented nurses working in the Bass Center Clinic were "invited to apply for the new relocated positions" there, all of the nurses who applied received positions. Tidwell ¶ 7. The hospital determined that the remaining work in the clinics involved "coordination of care" rather than direct patient care, and it assigned non-represented nurse coordinators to the Bass Center Clinics to perform the remaining functions. Def.'s Op. 5;

3

Case No. 5:10-cv-001633 JF
ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION; AND TERMINATING AS MOOT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC3)

Tidwell Decl.¶ 11.[3]

The Hospital distinguishes between staff nurses, whose duties are deemed "direct patient care" and include "administering medications and transfusions, drawing labs, performing tests ordered for patients, and planning[,] implementing, and evaluating the results of nursing care of assigned patients," and nurse coordinators, whose role includes coordinating the scheduling of patient care and helping patients navigate the medical system by providing education, guidance, and moral support. Tidwell Decl.¶ 3. However, nurse coordinators occasionally may provide patient care. Wells Decl.¶ 3.

Following the transfers, CRONA filed a grievance alleging both that "CRONA positions have been eliminated in the Oncology Neuro Oncology Stem Cell Clinic" and that "the patient care duties performed by CRONA nurses who vacated their positions are being performed by non-represented employees, i.e. Nurse Coordinators." Declaration of Lorie Johnson, Ex. B. The Hospital responded to the grievance with a letter stating that "no CRONA positions have been eliminated and no positions have been vacated." Johnson Decl., Ex. C. According to the letter, "the duties, and therefore, the positions, were transferred to a different cost center." *Id.* The Hospital contended that the unrepresented status of nurse coordinators in the clinics was not a grievable matter, but instead was a representation issue within the exclusive jurisdiction of the NLRB. *Id.* This action followed.

## II.  STANDARD OF REVIEW

Because CRONA "[is] seeking by [its] motion to have the Court award the ultimate relief sought," it is appropriate to treat CRONA's motion to compel arbitration and the Hospital's motion for summary judgment as cross-motions for summary judgment. *Teamster Automotive Employees Local Union No. 665 v. Ampco Parking*, No. C93-4577, 1994 U.S. Dist. LEXIS 2545, C93-4577, at *1 (N.D. Cal. Feb. 28, 1994); *see also Operating Eng'rs Local No. 3 v. Newmont*

---

[3] One CRONA-represented registered nurse remained with the clinics to help "orient" the new nurse coordinators. Tidwell Decl. ¶ 10. She then voluntarily chose to take a nurse coordinator position. *Id.*

4

*Mining Corp.*, 476 F.3d 690, 692 (9th Cir. 2007).  When parties present cross-motions for summary judgment, each motion must be considered on its own merits and analyzed under Federal Rule of Civil Procedure 56. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

CRONA moves to compel arbitration pursuant to Section 301 of the Labor Management Relations Act.[4]  29 U.S.C. § 185.  "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit."  *AT&T Technologies v. Communications Workers of America*, 475 U.S. 643, 650 (1986).  However, there is a "presumption of arbitrability" such that "[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is

---

[4] The parties devote some attention to disputing whether the Court may also compel arbitration pursuant to the Federal Arbitration Act.  9 U.S.C. § 1 *et seq.*  However, the parties agree that the same standards of arbitrability apply under the FAA and Section 301.  *See* Pl.'s Motion to Compel (MTC) 8 ("The same standard applies and the same result is reached pursuant to Section 301 [as under the FAA]"); Def.'s Op. 9 n. 5 ("[T]he standards of arbitrability under the FAA and Section 301 are largely identical.").

not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* (quoting *United Steel Workers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). The Supreme Court has explained the presumption of arbitrability for labor disputes as a recognition that "the greater institutional competence of arbitrators in interpreting collective-bargaining agreements furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining." *Id.* (internal quotation marks and citations omitted). In deciding whether the parties have agreed to submit a particular grievance to arbitration the court is not to evaluate the merits of the grievance, rather it is merely required to determine whether the parties agreed to arbitrate. *Id.* at 649-50.

### III.  DISCUSSION

The CBA contains a broad grievance and arbitration provision that defines a "formal grievance" as a "written claim by a nurse or CRONA concerning a nurse's wages, hours, or working conditions and involving the interpretation or application of [the CBA]." The CBA also provides that "[i]f a Registered Nurse position is removed from the bargaining unit in violation of Section 1.1 above, the grievance procedure shall be applicable." *Id.* at 1-2 (§ 1.3). The Hospital's right to manage "the content of nurses' jobs" is "not reviewable under [the CBA]," except "[i]n the event that the Employer determines that the content of a nurse's job covered by this agreement is such that the job should no longer be in the bargaining unit represented by CRONA." *Id.*

CRONA's grievance claims that the Hospital eliminated "CRONA positions" and that "patient care duties performed by CRONA nurses who vacated their positions are being performed by non-represented employees, i.e. Nurse Coordinators." Johnson Decl., Ex. B. Such allegations, on their face, appear to fall within the grievance provisions of the CBA. However, the Hospital contends that the allegations have no basis in fact. The Hospital contends that its actions "cannot even arguably" be characterized as removing CRONA-represented nursing positions from the bargaining unit, and that CRONA is attempting to force arbitration merely by

6

Case No. 5:10-cv-001633 JF
ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION; AND TERMINATING AS MOOT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC3)

labeling a nonarbitrable claim as an arbitrable one.

The Hospital points out that no CRONA-represented positions were eliminated. Instead, when patient care functions were transferred to the day hospital, all CRONA represented positions were transferred as well. In fact, more CRONA-represented nurses were employed after the transfer than before. However, CRONA claims that employees working at the Bass Center Clinics subsequent to the transfer still have duties that previously were performed by CRONA-represented nurses. CRONA argues that assigning such duties to non-represented nurse coordinators rather than CRONA nurses has resulted the removal of *positions* from CRONA's bargaining unit. CRONA contends that this implicates the CBA whether or not particular employees were terminated.

In essence, the Hospital interprets the CBA as giving rise to a grievance only when reassignment of duties results in a net loss of CRONA-represented positions. However, the CBA also is susceptible of a broader interpretation as to when a "position . . . is removed from the bargaining unit." Section 1.1 of the CBA recognizes CRONA as the "exclusive collecting bargaining representative" for registered nurses whose duties meet certain criteria. Accordingly, Section 1.3 reasonably could be read as providing that a "Registered Nurse position" is "removed from the bargaining unit in violation of Section 1.1" if a position meeting the Registered Nurse criteria is assigned to a person outside the bargaining unit, even if no individual nurse is terminated.

The Hospital next argues that all of the direct client care duties that previously were performed at the clinics were transferred to the day hospital. It asserts that because the duties of nurse coordinators do not include thirty-percent direct patient care, no "Registered Nurse position" remain in the clinics. *See* Quintel Decl., Ex. A at 74 (§ 31). However, CRONA contends that the duties the Hospital assigned to the nurse coordinators in the Bass Center Clinics traditionally have been performed by CRONA nurses and in fact do constitute direct patient care. *See* Pl.'s Op. to Def.'s Motion for Summary Judgment 7-8 n.5. The CBA itself does not contain a definition of "direct patient care." In light of this dispute, the Court cannot

7

Case No. 5:10-cv-001633 JF
ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION; AND TERMINATING AS MOOT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC3)

say with positive assurance that there is no permissible interpretation of the duties of a "Registered Nurse" that encompasses the actual duties of the nurse coordinators.

Finally, the Hospital contends that the subject primarily is an issue of whether the CRONA bargaining unit should be expanded to cover nurse coordinators and thus is a representational issue within the primary jurisdiction of the NLRB. It is true that the Ninth Circuit has "drawn the jurisdictional line by asking 'whether the major issues to be decided . . . can be characterized as primarily representational or primarily contractual.'" *Service Employees International Union, Local 399 v. St. Vincent Medical Center*, 344 F.3d 977, 983 (9th Cir. 2003). However, a case does not fall on the NLRB's primary jurisdiction side of the jurisdictional line merely by having 'representational' overtones." *Id.* at 984. While Section 301 was not intended to "vest the courts with initial authority to pass upon questions representation and determination of appropriate bargaining units," where the threshold question "is one of contract law" the matter falls within the traditional expertise of the courts, even if the outcome has implications regarding the composition of the bargaining unit. *Capp v. Wiseman*, 659 F.2d 957, 959 (9th Cir. 1981).

The dispositive issue here is whether the CBA reasonably may be read to support CRONA's argument that nursing positions improperly were transferred to workers outside the bargaining unit. The threshold question is not about "determining the appropriate group of employees for the bargaining unit," *id*., but whether the Hospital violated its contractual obligations by assigning CRONA-represented positions to non-represented employees.

In *Local No. 3-193, International Woodworkers of America v. Ketchikan Pulp Co.*, 611 F.2d 1295 (9th Cir. 1980), the Ninth Circuit held that the question of whether an employer breached a collective bargaining agreement by refusing to apply that agreement to particular employees was a representational issue subject to primary jurisdiction by the NLRB. The agreement at issue in that case provided that a particular union would be the exclusive bargaining representative at all operations the employer acquired in the future. The court refused to enforce the agreement, but its holding was not based on a conclusion that the dispute involved representational issues, but because it deprived the employees at the employer's future sites of

8

Case No. 5:10-cv-001633 JF
ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION; AND TERMINATING AS MOOT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC3)

their right to choose their own bargaining representative.  *See Hotel Employees, Restaurant Employees Union, Local 2 v. Marriot Corp.*, 961 F.2d 1464, 1468 (9th Cir. 1992).  Here, the CBA properly defined the scope of the bargaining unit, and the parties agreed to arbitrate disputes "involving in the interpretation or application" of that agreement.  Unlike the case in *Ketchikan Pulp*, no federal policy prevents the parties from defining the subject bargaining unit.  *See id.* (recognizing that "[w]hile the *courts* may not resolve representational issues, the *parties* may resolve these issues contractually" which can then be enforced judicially).

### IV.  ORDER

Good cause therefore appearing, CRONA's motion to compel arbitration is GRANTED.  The Hospital's motion for summary judgment is terminated as moot.  Because this is a final, appealable order, judgment shall be entered accordingly.[5]

DATED: 11/23/2010

_____
JEREMY FOGEL
United States District Judge

---

[5] *See Green Tree Fin'l Corp.-Alabama v. Randolph*, 531 U.S. 79, 86-89 (2000) (holding that the district court's order compelling arbitration was a final decision with respect to arbitration within the meaning of the Federal Arbitration Act and therefore appealable).

Case No. 5:10-cv-001633 JF
ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION; AND TERMINATING AS MOOT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC3)