1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E-Filed 4/28/2011**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| COMMITTEE FOR RECOGNITION OF NURSING ACHIEVEMENT, | Case No. 5:10-cv-01633 JF |
| Plaintiff, | |
| v. | ORDER[1] GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES |
| LUCILE SALTER PACKARD CHILDREN'S HOSPITAL, | |
| Defendant. | |

On November 23, 2010, the Court granted the motion of Plaintiff Committee for Recognition of Nursing Achievement (CRONA) to compel Defendant Lucile Salter Packard Children's Hospital (the Hospital) to arbitrate a grievance pursuant to the arbitration provision in the parties' collective bargaining agreement (CBA). CRONA now seeks to recover the attorneys' fees and expenses it incurred as a result of the Hospital's refusal to submit to arbitration.

## I. BACKGROUND

CRONA and the Hospital are parties to a CBA that includes a grievance procedure culminating in final and binding arbitration of any grievance "involving the application or

---

[1] This disposition is not designated for publication in the official reports.

1

interpretation" of the CBA.  *See* Agreement Between Lucile Salter Packard Children's Hospital and Committee for Recognition of Nursing Achievement, Declaration of Laurie J. Quintel, Ex. A.  Under the CBA, the Hospital recognizes CRONA as the exclusive bargaining unit of all "[r]egular full and part-time Registered Nurses, including relief and clinic nurses, engaged in the direct provision of patient care for 30% or more of their commitment."  The CBA further provides that "[i]f a Registered Nurse position is removed from the bargaining unit . . . the grievance procedure shall be applicable."  *Id.* at 1-2 (§ 1.3).

In February 2009, the Hospital opened the Bass Center for Childhood Cancer and Blood Diseases, which includes various clinics and a day hospital.  Some nursing functions that had been performed at the Bass Center Clinics subsequently were transferred to the Bass Center Day Hospital, while others remained at the clinics.  Herman Decl.¶ 6-7.  Work that the Hospital determined involved "direct patient care" was transferred to the day hospital, and CRONA-represented nurses working in the Bass Center Clinic were "invited to apply for the new relocated positions" at the day hospital; all of the nurses who applied received positions. Tidwell ¶ 7.  The Hospital determined that the remaining work in the clinics involved "coordination of care" rather than direct patient care, and it assigned non-represented nurse coordinators to the Bass Center Clinics to perform the remaining functions.  Tidwell Decl.¶ 11.

Following the transfers, CRONA filed a grievance alleging both that "CRONA positions have been eliminated" in the clinics and that "the patient care duties performed by CRONA nurses who vacated their positions are being performed by non-represented employees, i.e. Nurse Coordinators."  Declaration of Lorie Johnson, Ex. B.  The Hospital responded to the grievance with a letter stating that "no CRONA positions have been eliminated and no positions have been vacated."  Johnson Decl., Ex. C.  According to the letter, "the duties, and therefore, the positions, were transferred to a different cost center."  *Id.*  The Hospital also contended that the unrepresented status of nurse coordinators in the clinics was not a grievable matter but instead was a representation issue within the exclusive jurisdiction of the NLRB.  *Id.*

The Hospital asserted that CRONA's claim that "CRONA positions" has been eliminated had no basis in fact, and that its actions could not "even arguably" be characterized as removing

1   CRONA-represented nursing positions from the bargaining unit.  It claimed that all of the direct

2   client care duties that previously were performed at the clinics had been transferred to the day

3   hospital.  It argued that because the duties of nurse coordinators do not include thirty percent

4   direct patient care no "Registered Nurse positions" remained in the clinics.  *See* Quintel Decl.,

5   Ex. A at 74 (§ 31).  For its part, CRONA contended that the duties assigned to the nurse

6   coordinators in the Bass Center Clinics traditionally have been performed by CRONA nurses

7   and thus do amount to direct patient care.  *See* Pl.'s Op. to Def.'s Motion for Summary Judgment

8   7-8 n.5.  Because the CBA itself contains no definition of "direct patient care," this Court

9   concluded that it could not say with positive assurance that there is no permissible interpretation

10  of the duties of a "Registered Nurse" that encompasses the actual duties of the nurse

11  coordinators, and accordingly it granted CRONA's motion to compel arbitration.

12      The Hospital also contended that the parties' dispute primarily was about whether the

13  CRONA bargaining unit should be expanded to cover nurse coordinators and thus was a

14  representational issue within the primary jurisdiction of the NLRB.   The Court determined that

15  the scope of the bargaining unit is defined in the CBA, and that the parties have agreed to

16  arbitrate disputes "involving in the interpretation or application" of that agreement.  As a result,

17  the threshold question in the case was not about "determining the appropriate group of

18  employees for the bargaining unit," but whether the Hospital violated its contractual obligations

19  by assigning CRONA-represented positions to non-represented employees.

20                          **II.  LEGAL STANDARD**

21      Ordinarily, the prevailing party in a lawsuit does not collect attorney's fees absent

22  contractual or statutory authorization.  *See International Union of Petroleum & Industrial*

23  *Workers v. Western Indus. Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir. 1983).  However, a

24  court may award fees if it finds that the losing party "acted in bad faith, vexatiously, wantonly,

25  or for oppressive reasons."  *Id.* (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421

26  U.S. 240, 258-59 (1975)).  Because of federal policy favoring arbitration of labor disputes, the

27  Ninth Circuit has held that "bad faith" may be found where a party refuses to submit a dispute to

28  arbitration without justification.  *United Food & Commercial Workers Union v. Alpha Beta Co.*,

3

1  736 F.2d 1371, 1382 (9th Cir. 1984); *see also Fed'n of Agents & Int'l Representatives v. United*

2  *Food & Commercial Workers Union*, 8 Fed. Appx. 737, 740 (9th Cir. 2001) ("Because of federal

3  policy favoring arbitration, [the Ninth Circuit] ha[s] applied "a less demanding–'no

4  justification'–standard in cases involving the refusal to arbitrate a labor dispute."); *Petroleum &*

5  *Industrial Workers v. W. Indus. Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir. 1983) (applying

6  the "no justification" standard to a party's refusal to comply with arbitration award). This

7  standard is met when a party's "obstinacy in granting . . . [the plaintiff] his clear legal rights

8  necessitates resort to legal action with all the expense and delay entailed in litigation." *Petroleum*

9  *& Industrial Workers*, 707 F.2d at 428.

10  ## III. DISCUSSION

11  CRONA contends that the Hospital engaged in bad faith, dilatory conduct by refusing to

12  arbitrate CRONA's grievance as required by the CBA. CRONA observes correctly that the

13  Hospital may avoid arbitration only if it can demonstrate " with positive assurance that the

14  arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Pl.'s

15  mt. At 6 (quoting *United States Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363

16  U.S. 574, 582-83 (1960). In light of the federal policy in favor of arbitration of labor disputes,

17  the Hospital was required to have some justification for believing it could meet this standard

18  before refusing arbitration.

19  The Hospital asserts that it believed that CRONA's grievance involved the non-arbitrable

20  issues involving the Hospital's right to relocate employees and CRONA's right to represent

21  employees who do not provide direct patient care. The Hospital took the position that there was

22  not even an arguable construction of the CBA supporting CRONA's contention that represented

23  positions were being filled by non-represented employees. According to the Hospital, because

24  *all* direct patient care duties had been transferred from the clinics to the day hospital, there was

25  no basis for the argument that some positions remaining in the clinics effectively had been

26  removed from the bargaining unit. The Hospital supported its position with deposition testimony

27  indicating that all direct patient care duties had been removed from the clinics. *See, e.g.*, Tidwell

28  ¶ 7. The Hospital claims that CRONA argued not that the positions in question involved *direct*

4

1   patient care but that nurse coordinators were performing "patient care duties" and "duties

2   previously performed by CRONA nurses."  The Hospital characterizes CRONA's claim that

3   nurse coordinators in fact engaged in direct patient care as a "cynical mid-stream course change"

4   in response to the Hospital's motion for summary judgment.  *See* Second Johnson Decl. ¶ 7.

5         CRONA argues that the actual issues raised in its grievance clearly were arbitrable and

6   that the Hospital's attempt to characterize the grievance as involving relocation of positions or

7   the representation of nurse coordinators was disingenuous.  CRONA claims that as early as

8   September 1, 2009, it put the Hospital on notice that it believed that positions involving

9   registered nurse duties were being filled by non-represented nurse coordinators.  It indicates that

10   it requested job descriptions for the "nurse coordinator" positions because it was "trying to

11   determine if CRONA bargaining unit work [was] being transferred to non-bargaining unit 'Nurse

12   Coordinator' positions."  Third Johnson Decl., Ex. A.  The grievance, which was filed on

13   September 11, 2009, states that "patient care duties performed by CRONA nurses who vacated

14   their positions are being performed by non-represented employees, i.e., Nurse Coordinators."

15   First Johnson Decl., Ex. B.  Again, on October 18, 2009, in response to the Hospital's refusal to

16   provide information on the job descriptions of nurse coordinators, CRONA wrote:

17         The collective bargaining agreement recognizes CRONA as the exclusive
         representative of all relief and clinic nurses who spend 30% or more of their
18         commitment on providing patient care.  The contract therefore prohibits [the
         Hospital] from using non-bargaining employees such as Nurse Coordinators to
19         perform the same patient-care duties performed by CRONA nurses.  *The Union
         filed a grievance on September 11, 2009 challenging what we believe to be the*
20         *unlawful transfer of bargaining unit work to non-bargaining unit positions.*  The
         information which [the Hospital] has refused to provide is plainly relevant to
21         CRONA's investigation of this matter and efforts to enforce the contract.

22   Third Johnson Decl., Ex. C (emphasis added).  Finally, CRONA's complaint in this Court

23   alleges that the Hospital "had transferred patient care duties previously performed by CRONA

24   nurses to "Nurse Coordinator" positions outside the bargaining unit," and "violated Section 1.1

25   of the CBA, which recognizes CRONA as the bargaining agent of relief and clinic nurses who

26   spend 30% or more of their work commitment on providing patient care."  Compl. ¶¶ 12-13.

27         While CRONA did not make explicit reference to the CBA's requirement that covered

28   nurses spend thirty percent of their commitment on "*direct* provision of patient care," the record

5

1  shows that it claimed repeatedly and unambiguously that its grievance involved the transfer of

2  "patient care duties" from CRONA nurses to non-represented positions.  It is clear from those

3  statements that CRONA's grievance was not focused upon or limited to the physical relocation

4  of nurses or union representation of employees not involved in patient care.  The Hospital

5  provides little support for its argument that the arbitration clause, which provides for arbitration

6  in all disputes "involving the interpretation or application" of the CBA, was inapplicable.  The

7  Hospital's distinction between a claim that nurse coordinators engaged in "patient care duties

8  previously performed by CRONA nurses" and one concerned with "*direct* patient care," is too

9  subtle given the low bar for arbitrability.  As CRONA points out, section 23.2.2(a) of the CBA

10 requires only "a brief description of the action or inaction complaint of . . . and [the] Section or

11 Sections of the agreement alleged to be involved."  First Johnson Decl. Ex. A.

12      Although the Hospital's substantive argument–that the nurse coordinator positions in the

13 clinics do not involve direct patient care duties and thus should not be considered CRONA-

14 represented positions–is not frivolous, the Court concludes that the Hospital acted without

15 reasonable justification in claiming that the parties' dispute was not arbitrable.  Under

16 controlling case law in the Ninth Circuit, parties may not avoid arbitration unless the arbitration

17 clause is not susceptible of an interpretation that covers the asserted dispute, and the federal

18 policy favoring the arbitration of labor disputes requires that parties not act without justification

19 in refusing to arbitrate.  Particularly in light of its sophistication and experience in labor

20 relations, the Hospital reasonably could have been expected to understand the substance of

21 CRONA's grievance to be that "the patient care duties performed by CRONA nurses who

22 vacated their positions are being performed by non-represented employees," an issue that

23 requires interpretation or application of the CBA in order to determine the precise duties of a

24 registered nurse position.

25      The amount CRONA seeks for its attorneys' fees and expenses is reasonable.  "The most

26 useful starting point for determining the amount of a reasonable fee is the number of hours

27 reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v.*

28 *Eckerhart*, 461 U.S. 424, 433 (1983); *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1157 (9th Cir.

6

1  2002).  CRONA has provided detailed records detailing the $49,054.00 its counsel billed

2  litigating the motion to compel arbitration and opposing the Hospital's motion for summary

3  judgment.  Both the time spent on the litigation (approximately one hundred hours of attorney

4  time) and the hourly rate charged appear to be reasonable.  Likewise, CRONA's litigation

5  expenses of $975.49 appear to be reasonable.

6  **IV.  ORDER**

7      CRONA's motion for attorneys' fees and expenses is GRANTED.   CRONA is awarded

8  attorneys' fees of $49,054.00, plus $975.49 in litigation expenses.

11  DATED: March 28, 2011

12  _____
   JEREMY FOGEL
   United States District Judge